FILED
United States Court of Appeals
Tenth Circuit

April 5, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

LAKHVIR GURPAL KHAKHN,

      Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

      Respondent.

No. 08-9544
(Petition for Review)

ORDER AND JUDGMENT[*]

Before **LUCERO**, **PORFILIO**, and **ANDERSON**, Circuit Judges.


Petitioner Lakhvir Gurpal Khakhn petitions for review of an immigration

officer's (IO) May 2008 decision ordering him removed by reinstatement of a

prior removal order.[1]  He first argues that the reinstatement statute, 8 U.S.C.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]     We acknowledge that the documents in the administrative record refer to Mr. Khakhn by various aliases.  Neither party disputes that Mr. Khakhn is the individual referenced therein.  Mr. Khakhn asserts in a footnote in his appellate brief that his real name is Lakhvir Singh but refers to himself as Lakhvir Gurpal

(continued...)

§ 1231(a)(5) does not facially apply to him.  He then argues that if § 1231(a)(5) does apply to him, (1) the LIFE Act prohibits reinstatement because he applied for adjustment of status thereunder;[2] (2) 8 U.S.C. § 1255a(e)(2) prohibits reinstatement of his prior removal order until his legalization application has been adjudicated, and (3) application of § 1231(a)(5) is impermissibly retroactive because he applied for legalization prior to that statute's enactment.  We deny Mr. Khakhn's petition for review.[3]

## I.  Factual and Procedural Background

Mr. Khakhn, a native and citizen of India, entered the United States from Canada around 1980.  He lived California until 1998.  He admitted in a sworn 2003 statement that he traveled to Canada for a few months in 1987, then returned to the United States without inspection.  He also traveled to Canada in 1989 and was arrested on his attempted reentry.  He admitted he was deportable and applied for voluntary departure in lieu of deportation.  An Immigration Judge entered a

---

[1](...continued)
Kahkhn throughout for ease of use.  We shall do the same.

[2]      The "Life Act," as used herein, refers both to the Life Act, Pub. L. No. 106-553, 114 Stat. 2762A-142 through 149 (2000), and LIFE Act Amendments of 2000, Pub. L. No. 106-5545, 114 Stat. 2763A-324 through 328 (2000).

[3]      We previously abated this matter due to an outstanding administrative relief proceeding.  As Mr. Khakhn has now informed the court that the administrative relief proceeding has ended and that he does not seek review of the outcome in that proceeding, our previous abatement order is hereby lifted.  The government's motion to dismiss is denied.

summary order allowing Mr. Khakhn until October 5, 1989, to voluntarily depart. The decision included an alternate deportation order to become "immediately effective" upon Mr. Khakhn's failure to voluntarily depart by October 5.  Admin R. at 2.  Under that order, Mr. Khakhn was to be deported "without further notice or proceedings" to Canada or, if Canada would not accept him, to India.  *Id*.

Mr. Khakhn was released from custody after posting bond.  He alleges, based on his 2003 statement, that he left the United States for Canada before October 5, 1989; crossed into Canada without inspection; and was then smuggled back into the United States in early 1990.  *See id*. at 27.  Other than his 2003 statement, there is no evidence to support this assertion.  A Warrant of Deportation was entered against him dated November 7, 1989, and the government considered his bond to be breached as of February 23, 1990.

In March 1990, Mr. Khakhn filed a Form I-687 application for legalization under 8 U.S.C. § 1255a.  At some unknown time, he again left the United States. He reentered the United States in December 1998, using a fraudulent Indian passport and United States visa with his picture and someone else's name.  He moved to Washington and filed a LIFE Act application for adjustment of status in March 2002.  He moved to Nevada and appeared for an interview on his LIFE Act application in January 2003.  He was taken into custody on the basis of the outstanding 1989 deportation warrant.  He was released on bond, but, after his

3

LIFE Act application was denied in September 2003, he again failed to report for deportation.

Mr. Khakhn was arrested in January 2008. In April 2008, he was issued a notice of intent to reinstate his 1989 deportation order under § 1231(a)(5). Although not in the record, Mr. Khakhn evidently made a statement contesting this notice, but a supervisory IO determined that he was "subject to removal through reinstatement of the prior [removal] order" based on his review of "all available evidence, the administrative file and any statements made or submitted in rebuttal." *Id*. at 1. His petition for review of that order is now before us.

## II. Analysis

We have jurisdiction over Mr. Khakhn's petition because a reinstatement order made by an IO is a "final order of removal" reviewable under 8 U.S.C. § 1252(a)(1). *See, e.g., Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1162 (10th Cir. 2004).

A. *Requirements for Reinstatement*. Mr. Khakhn contends that he does not meet the facial requirements for reinstatement. Reinstatement orders are issued pursuant to § 1231(a)(5), which provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

4

An IO must make three determinations: (1) 'the alien has been subject to a prior order of removal'; (2) 'the alien is in fact an alien who was previously removed'; and (3) 'the alien unlawfully reentered the United States.'" *Garcia-Marrufo v. Ashcroft*, 376 F.3d 1061, 1064 (10th Cir. 2004) (quoting 8 C.F.R. § 241.8).

1. *Prior Removal Order.* Mr. Khakhn first argues that he has not been subject to a prior order of removal because he timely departed from the United States, thus, the 1989 order never became a removal order. In reinstating the order, the IO relied on the agency's 1989 administrative determination that Mr. Khakhn failed to leave the country in a timely manner, and its subsequent issuance of the deportation warrant. Based on his 2003 statement, Mr. Khakhn asserts that he timely departed in 1989 to Canada without inspection. He admits he did not surrender for deportation when ordered to do so, and made no attempt to get the bond money returned, which was declared breached in 1990. Other than his 2003 statement, there is no evidence to support his assertion that he timely departed. In short, he has made no colorable showing of a timely departure. We therefore find no error in the IO simply relying on the agency records. There is a presumption of regularity that attaches to such administrative procedures, and we will not assume, absent clear evidence to the contrary, that the agency erred in determining that he failed to timely depart. *See Yuk v. Ashcroft*, 355 F.3d 1222, 1232 (10th Cir. 2004); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993). No such evidence has been presented.

5

2. *Illegal Reentry.* Mr. Khakhn next argues that his December 1989 return to the United States was not an illegal reentry for purposes of § 1231(a)(5) because he "was admitted and inspected by an [IO] when he reentered the U.S." Pet'r Br. at 9. We disagree.

The question of whether reentry after inspection and admission by an IO, but through the use of fraudulent entry documents, is an illegal reentry, is a question of law that we review de novo. *Ochieng v. Mukasey*, 520 F.3d 1110, 1113 (10th Cir. 2008). Mr. Khakhn's argument is that any entry that follows inspection and authorization by an IO should be considered a "legal" entry for the purposes of reinstatement under 8 U.S.C. § 1231(a)(5). To the contrary, we held in *Lorenzo v. Mukasey* that an alien who entered in the back seat of a car without questioning by officials illegally entered for purposes of § 1231(a)(5), because aliens entering without proper documentation were "inadmissible" and because the alien in question had been previously removed and was not eligible for legal admission at the time of reentry. 508 F.3d 1278, 1283 (10th Cir. 2007). Thus, we conclude that Mr. Khakhn met the facial requirements for reinstatement under § 1231(a)(5).

B. *LIFE Act and Amendments.* Mr. Khakhn next argues that "[s]ection 1104(g) of the LIFE Act explicitly prohibits the DHS from reinstating prior deportation orders against LIFE Act applicants." Pet'r Br. at 11. That section reads: "Section 241(a)(5) [8 U.S.C. § 1231(a)(5)] of the Immigration and

6

Nationality Act shall not apply with respect to an alien who is applying for adjustment of status under this section." 114 Stat. 2763A-325. But Mr. Khakhn is no longer "applying" for adjustment of status under the LIFE Act; his application was denied in 2004. He argues that anyone who applies for adjustment of status under the LIFE Act is permanently immune to reinstatement because the statute could have been written to more clearly state that immunity from reinstatement lasts only until a final determination is made on the application. This argument is without merit. Congress' use of the present participle is unambiguous. Under Mr. Khakhn's strained interpretation, every alien who illegally reentered the country after removal would simply file a LIFE Act application when apprehended, and be forever immune from reinstatement, an absurd result.

C. *8 U.S.C. § 1255a*. Finally, Mr. Khakhn asserts that he is not subject to reinstatement because he applied for legalization under 8 U.S.C. § 1255a in March of 1990 and his Form I-687 application has not yet been adjudicated.

Pursuant to § 1255a "certain aliens unlawfully present in the United States can apply to become legal residents" through a process referred to as legalization. *Proyecto San Pablo v. INS*, 189 F.3d 1130, 1134 (9th Cir. 1999).

1. *Section 1255a(e)(2)*. Mr. Khakhn first asserts that § 1255a(e)(2) prohibits reinstatement of his prior removal order until his I-687 application is adjudicated. His three-sentence argument is conclusory and unsupported by any

7

legal analysis or relevant precedent. His argument is neither reasoned nor adequate to merit reversal. "Arguments inadequately briefed in the opening brief are waived . . . ." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998); *see also* Fed. R. App. P. 28(a)(9)(A) ("[Appellant's] argument . . . must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies.").

2. *Impermissibly Retroactive.* Mr. Khakhn argues that, if reinstatement of his removal order is not barred by §1255a(e)(2), application of § 1231(a)(5) in his case would have an impermissibly retroactive effect. He argues that he applied for legalization prior to enactment of § 1231(a)(5) and reinstatement would cut off his right to have his I-687 application for relief "completed and adjudicated in a fair and just manner." Pet'r Br. at 15. The government admits his I-687 application has never been adjudicated, but asserts there is no impermissible retroactive effect because the application does not provide an avenue of relief for Mr. Khakhn. The retroactivity of a statute is a question of law we review de novo. *Hem v. Maurer*, 458 F.3d 1185, 1189 (10th Cir. 2006). We conclude that § 1231(a)(5) does not have an impermissible retroactive effect here because he illegally reentered the country *after* the statute's effective date.

In *Fernandez-Vargas v. Gonzales*, the Supreme Court held that § 1231(a)(5) did not have an impermissibly retroactive effect with respect to an alien who reentered the country *prior to* enactment of § 1231(a)(5) because the

8

statute did not affect the past act of illegal reentry but, instead, focused on the "predicate action" of the alien's continued illegal presence after entry. 548 U.S. 30, 44 (2006). Here, Mr. Khakhn illegally reentered the country *after* the statute's effective date. The Court clearly assumed in *Fernandez-Vargas* that § 1231(a)(5) applied to reentries *after* enactment of § 1231(a)(5). Mr. Khakhn is assumed to have known, at the time he illegally reentered the country in 1998, that § 1231(a)(5) provided that aliens in his position were ineligible for any relief under the immigration law. *See Warner v. Ashcroft*, 381 F.3d 534, 538 (6th Cir. 2004) (holding that because the alien's illegal reentry occurred after IIRIRA's effective date, the alien "was on notice of the consequences of his illegal reentry before he chose to illegally reenter the United States") ; *Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003) ("Because [§ 1231(a)(5)] was in effect at the time of [the alien's] reentry conduct, its provisions appropriately define his rights.). Thus, Mr. Khakhn's retroactivity argument must fail.

Mr. Khakhn's petition for review is DENIED.

Entered for the Court

Stephen H. Anderson
Circuit Judge

9