**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 14, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

JOSUE GONZALO MANRIQUEZ-
HERNANDEZ,

     Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

     Respondent.

No. 22-9581
(Petition for Review)

_____

### ORDER AND JUDGMENT[*]
_____

Before **EID**, **CARSON**, and **ROSSMAN**, Circuit Judges.
_____

Josue Gonzalo Manriquez-Hernandez petitions for review of a final order of

removal the Board of Immigration Appeals (Board) issued.  The Board upheld an

immigration judge's denial of Manriquez-Hernandez's application for withholding of

removal, cancellation of removal, and relief under the Convention Against Torture

(CAT), and of his request for voluntary departure.  Exercising jurisdiction pursuant to

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

8 U.S.C. § 1252(a), we grant the petition in part as to the denial of cancellation and remand to the Board for further proceedings. We otherwise deny the petition.

## I. BACKGROUND

### A. Proceedings before the immigration judge

Manriquez-Hernandez is a native and citizen of Mexico who entered the United States without admission or parole in July 2005, when he was nine years old. In March 2015, the Department of Homeland Security served him a Notice to Appear (NTA), charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without admission or parole. He conceded removability but applied for cancellation of removal of a nonpermanent resident under 8 U.S.C. § 1229b(b), withholding of removal under 8 U.S.C. § 1231(b)(3), and CAT relief. He also sought voluntary departure under 8 U.S.C. § 1229c(b).

An immigration judge (IJ) held a hearing. At the outset, the IJ pretermitted Manriquez-Hernandez's cancellation application because he was a few months short of the ten years of continuous physical presence in the United States required for cancellation eligibility. The IJ therefore informed Manriquez-Hernandez that there would be no questions about hardship to a qualifying relative if he were removed. "[E]xceptional and extremely unusual hardship" to a qualifying relative is another eligibility requirement for cancellation. *See* § 1229b(b)(1)(D).[1]

---

[1] The other requirements for cancellation eligibility are "good moral character," § 1229b(b)(1)(B), and a showing that the applicant has not been convicted under certain enumerated provisions of the immigration laws, § 1229b(b)(1)(C).

In support of his requests for withholding of removal and CAT relief, Manriquez-Hernandez said he feared that his former caretakers would harm him if he returns to Mexico. He explained that in 2004, when his mother was leaving Mexico for the United States (his father had apparently done so in 2003), she arranged for some friends to take care of Manriquez-Hernandez and his sister in the family's house. Manriquez-Hernandez alleged that the caretakers used drugs and alcohol in the house and mistreated him and his sister. They told their uncle, who, with the help of the police, was able to get the caretakers to leave the house. A week later, Manriquez-Hernandez and his sister found the inside of their house destroyed and threats to their lives painted on the walls. He and his sister did not tell anyone, but until they left for the United States a few months later, they slept at their house only occasionally and otherwise stayed away from it as much as possible. Since coming to the United States, Manriquez-Hernandez has had no contact with the caretakers.

Manriquez-Hernandez also asserted a fear of harm if removed to Mexico based on text messages his mother received in 2017. The messages threatened her family and were accompanied by images of a decapitated man and other men holding guns. According to Manriquez-Hernandez, when his mother told the sender of the messages that she would call the police, the sender said that if she did so, "the organization will take care of you and your family." R., Vol. 1 at 202. Manriquez-Hernandez did not know who sent the messages and was unsure if his mother was the intended recipient.

3

Manriquez-Hernandez further testified that his parents divorced, which resulted in family troubles that caused him to engage in conduct leading to multiple arrests and tickets from 2010 to 2015. The IJ summarized that conduct as including

> membership in the Southside Sureño 13 criminal street gang, breaking into cars to steal items, marijuana possession, alcohol possession and use, shooting a child with a BB gun in order to rob them, fleeing that incident, breaking into other cars and fleeing when the police arrive[d], stealing a vehicle, driving [that vehicle] while drunk and crashing that vehicle, and resisting arrest when the police officer sought to apprehend him.

*Id.* at 100. Manriquez-Hernandez also admitted that just a month before the hearing in 2019, he received a traffic citation for driving with a revoked license. He further testified that he had gone through a lot of therapy and may have been diagnosed with depression. He added that he had his own family now (a wife and two children) and a job, and accordingly he had changed his ways and was trying to improve.

To link his fear of future harm to a protected ground, as required for statutory withholding, Manriquez-Hernandez proposed four particular social groups (PSGs). Three were defined by family relationships and the fourth comprised former members of the Southside Sureño 13 gang. He also claimed fear of future persecution based on his political opinion.

## B.    The IJ's decision

The IJ denied withholding of removal for several independent reasons: (1) none of Manriquez-Hernandez's proposed PSGs were cognizable, and he presented no evidence regarding his political opinion; (2) he did not claim past persecution, and he did not establish it was more likely than not that he would be

4

harmed in the future on account of his membership in any of his proposed PSGs; and (3) he did not demonstrate that he could not safely relocate in Mexico.

The IJ denied CAT relief because Manriquez-Hernandez provided no evidence that the Mexican government or police had ever harmed him or that it was more likely than not that he would be tortured in Mexico with the government's consent or acquiescence. The IJ noted that the one time Manriquez-Hernandez interacted with the Mexican police, the police had helped his family.

The IJ also concluded Manriquez-Hernandez was not eligible for cancellation. The IJ explained that although the NTA did not state the time and place to appear, a notice of hearing served on Manriquez-Hernandez two days later provided that information and therefore perfected the deficient NTA. That combination, the IJ concluded, cut off Manriquez-Hernandez's continuous presence in the United States a few months short of the required ten years under the so-called "stop-time rule."[2]

In the alternative, the IJ found that even if Manriquez-Hernandez was statutorily eligible for cancellation, the IJ would deny cancellation as a matter of discretion because Manriquez-Hernandez had not demonstrated he was "a most deserving candidate to warrant [cancellation]." R., Vol. 1 at 102 n.1 (brackets and internal quotation marks omitted). Specifically, the IJ found that Manriquez-Hernandez's "criminal history, his former gang membership, and his

---

[2] "Under the statutory 'stop-time rule,' the period of continuous physical presence ends (A) when the alien is served with a notice to appear, or (B) when the alien has committed certain criminal offenses. 8 U.S.C. § 1229b(d)(1)." *Estrada-Cardona v. Garland*, 44 F.4th 1275, 1278–79 (10th Cir. 2022).

unwillingness to be truthful with this Court" about his criminal actions[3] outweighed the positive factors—letters Manriquez-Hernandez submitted from family, friends, and others describing his good character; his lengthy residence in the United States; and his many family ties here, including his marriage to a United States citizen with two children. R., Vol. 1 at 102. For these same reasons, the IJ denied voluntary departure as a matter of discretion.

## C.    The Board's decision

The Board adopted and affirmed the IJ's denial of withholding of removal and CAT relief. Regarding withholding, the Board concurred with the IJ that Manriquez-Hernandez "did not establish a clear probability of future persecution on account of his political opinion or membership in a [PSG]." *Id.* at 3. The Board separately concluded that intervening Board precedent regarding family-based PSGs did "not affect or alter the [IJ's] conclusions." *Id.* at 3, n.2. The Board noted that Manriquez-Hernandez had not challenged the IJ's third basis for denying withholding—that he did not meet his burden to show he could not safely relocate in Mexico—and therefore concluded that he had waived the issue. The Board also agreed with the IJ's conclusion regarding CAT relief, adding that "it is purely speculative that [Manriquez-Hernandez] will be targeted for harm when he returns to Mexico." *Id.*

---

[3] Regarding Manriquez-Hernandez's lack of candor to the court, the IJ found that he "lied on several occasions relating to his prior history with the gang and his criminal history." R., Vol. 1 at 101.

Turning to cancellation, the Board observed that since the IJ's decision, the Supreme Court had "held that an NTA sufficient to trigger the stop-time rule is a single document containing all the information about an individual's removal hearing specified in . . . 8 U.S.C. § 1229(a)(1)." R., Vol. 1 at 3 (discussing *Niz-Chavez v. Garland*, 593 U.S. 155 (2021)). The Board therefore concluded that the deficient NTA served on Manriquez-Hernandez "was not sufficient to stop the accrual of [his] continuous physical presence." *Id.* (citation omitted). But rather than grant his motion for remand to the IJ for further factfinding regarding hardship, the Board agreed with the IJ that even if Manriquez-Hernandez was eligible for cancellation, he was not entitled to cancellation in the exercise of discretion because the negative factors (his criminal history and former gang membership) outweighed the positive ones (his lengthy residence in the United States and his many family ties here). And like the IJ, the Board denied voluntary departure as a matter of discretion for the same reasons.

## II. DISCUSSION

The Board's decision was a full explanatory opinion by a three-member panel. *See* 8 C.F.R. § 1003.1(e)(6). Accordingly, the Board's "opinion completely super[s]edes the IJ decision for purposes of our review." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir. 2006). We therefore confine our review to the Board's opinion. We review the Board's legal determinations de novo and its factual findings for substantial evidence. *Igiebor v. Barr*, 981 F.3d 1123, 1131 (10th Cir. 2020).

7

In his petition, Manriquez-Hernandez contends that the Board should have remanded the case to the IJ for reconsideration of (1) withholding of removal based on intervening precedent regarding family-based PSGs; (2) eligibility for CAT relief based on a determination of willful blindness; (3) statutory eligibility for cancellation, in particular whether he showed the exceptional and extremely unusual hardship required for cancellation; and (4) the denial of voluntary departure. We agree with his third and fourth contentions but reject the first two.

## A.     Withholding

Manriquez-Hernandez argues that in light of the intervening precedent regarding family-based PSGs, the Board should have remanded his case to the IJ for reconsideration of whether he established a cognizable family-based PSG in support of his withholding application. But Manriquez-Hernandez raises no challenge to an independently dispositive ground the Board relied in denying withholding—his failure to challenge the IJ's dispositive determination that he did not establish he could not safely relocate to another part of Mexico. *See* 8 C.F.R. § 1208.16(b)(3)(i) (placing burden on withholding applicant who has not suffered past persecution to demonstrate that it would not be reasonable to relocate within a country to avoid future threats to his life or freedom on account of a protected ground). Because Manriquez-Hernandez has not challenged that ground, he cannot prevail with respect to the denial of withholding, and we need not consider his argument regarding his proposed PSGs. *See Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (concluding that because an unchallenged agency finding was "by itself, a sufficient

basis for" denying relief, "success on appeal is foreclosed—regardless of the merit of [petitioner's] arguments relating to" a separate ground for the denial of relief).

## B.    CAT relief

Manriquez-Hernandez argues that the Board should have remanded the case to the IJ because the IJ made no findings whether the Mexican government would willfully turn a blind eye to any torture he might be subjected to in the future. We reject this argument.

Evidence that public officials are willfully blind to activity constituting torture can satisfy a CAT applicant's burden of showing that they will acquiesce in his future torture. *See Karki v. Holder*, 715 F.3d 792, 806 (10th Cir. 2013) (explaining requirements for CAT relief, including that any torture would be "by a public official, or at the instigation or with the acquiescence of such an official" (internal quotation marks omitted)); 8 C.F.R. § 1208.18(a)(7) ("Willful blindness means that the public official acting in an official capacity or other person acting in an official capacity was aware of a high probability of activity constituting torture and deliberately avoided learning the truth[.]"). But in its CAT analysis, the Board determined it was "purely speculative" that Manriquez-Hernandez would "be targeted for harm when he returns to Mexico." R., Vol. 1 at 3. Manriquez-Hernandez has not challenged that determination, so he has waived review of it. *See Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be

9

waived."). And absent any likelihood that he would be tortured, there was no reason for the Board to address willful blindness.[4]

## C. Cancellation

Regarding cancellation, Manriquez-Hernandez argues that after concluding the NTA was insufficient to cut off his continuous presence short of ten years, the Board erred by exercising de novo review and determining that he did not merit cancellation as a matter of discretion. He contends that because the IJ did not take testimony or make predictive findings about hardship, the Board should have remanded the case to the IJ for further factfinding regarding his statutory eligibility for cancellation, and that by not doing so, it "necessarily exceeded its permissible scope of review and conducted fact-finding contrary to 8 C.F.R. § 1003.1(d)(3)(iv)." Pet'r's Opening Br. at 30.

In the alternative, Manriquez-Hernandez argues that even if the Board can deny relief as a matter of discretion in the first instance, it erred by doing so here because it made that discretionary decision without having any testimony or factual findings about hardship and without any indication that it had considered his documentary hardship evidence. He therefore concludes that the Board did not

---

[4] We note that the IJ did find that there was "certainly not sufficient evidence that the government of Mexico would turn a blind eye, that is, acquiesce[,] to [Manriquez-Hernandez] being tortured by governmental or non-governmental actors," R., Vol. 1 at 99–100.

consider all the factors set out in its own case law regarding discretionary denials of cancellation.[5]

As an initial matter, we must assess our jurisdiction to consider Manriquez-Hernandez's challenges to the Board's denial of his application for § 1229b cancellation. *See Galeano-Romero v. Barr*, 968 F.3d 1176, 1181 (10th Cir. 2020). Generally, § 1252(a)(2) strips circuit courts of jurisdiction to review any judgment regarding cancellation of removal except for constitutional claims and questions of law. *See* 8 U.S.C. § 1252(a)(2)(B)(i), (D); *see also Galeano Romero*, 968 F.3d at 1182 (recognizing that we retain jurisdiction to review "constitutional claims and questions of law, including those that arise in the circumstances specified at § 1229b(b)(1)" (internal quotation marks omitted)). We have interpreted the statute as "denying jurisdiction to review the discretionary aspects of a decision concerning cancellation of removal." *Galeano-Romero*, 968 F.3d at 1181 (internal quotation marks omitted). Among those discretionary aspects is the ultimate decision whether to grant cancellation to an eligible applicant. *See* § 1229b(b)(1) (providing that "[t]he Attorney General *may* cancel removal" if the applicant is statutorily

---

[5] It is questionable whether Manriquez-Hernandez has argued a due process violation regarding the discretionary denial of cancellation. *Compare* Pet'r's Opening Br. at 24 (asserting that the Board violated his due process rights by not remanding to the IJ for reconsideration of his eligibility for cancellation), *and* Pet'r's Reply Br. at 12–16 (fleshing out a due process argument), *with* Pet'r's Opening Br. at 32 (stating that he "is not presenting a formal due-process claim, despite the strength of his claim, because of the minimal rights noncitizens are entitled to"). We need not resolve whether he raised a constitutional claim because his legal-error argument has merit.

eligible (emphasis added)); 8 C.F.R. § 1240.8(d) (placing burden on applicant to show eligibility for relief from removal "and that it should be granted in the exercise of discretion"); *Patel v. Garland*, 596 U.S. 328, 332 (2022) ("Because relief from removal is always a matter of grace, even an eligible noncitizen must persuade the immigration judge that he merits a favorable exercise of discretion." (internal quotation marks omitted)).[6]

We have jurisdiction to consider both of Manriquez-Hernandez's arguments because they raise questions of law.  Specifically, his first argument raises the question whether the Board exceed its permissible scope of review by making factual findings in violation of § 1003.1(d)(3)(iv).  *See Padmore v. Holder*, 609 F.3d 62, 67 (2d Cir. 2010) ("[W]hen the [Board] engages in factfinding in contravention of . . . § 1003.1(d)(3)(iv), it commits an error of law, which we have jurisdiction to correct."); *cf. Galeano-Romero*, 968 F.3d at 1184 ("Obviously, the Board would lack discretion to contravene statutory requirements.").  And his alternative argument raises the question whether the Board deviated from its own precedent by not considering, or showing that it had considered, his evidence of hardship as a positive factor in the discretionary calculus.  *See Galeano Romero*, 968 F.3d at 1184

---

[6] We agree with Manriquez-Hernandez that his arguments are not directed at any finding regarding the degree of hardship any of his qualifying relatives would experience upon his removal.  Indeed, neither the IJ nor the Board made any such findings or determinations.  We therefore need not address the government's argument that we lack jurisdiction over such an argument under *Galeano-Romano* and *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020).

(explaining that it is a question of law whether the Board "depart[s] from or ignore[s] its precedent"). We therefore have jurisdiction to review both arguments.

We reject his first argument. If an IJ decides that denial of relief from removal would be appropriate "regardless of eligibility, the judge need not address eligibility at all." *Patel*, 596 U.S. at 332. Thus, like the IJ, the Board was permitted to assume statutory eligibility and proceed directly to the discretionary decision. And in denying cancellation, the Board did not engage in any factfinding. It instead assumed statutory eligibility for cancellation, which necessarily included the assumption that exceptional and extremely unusual hardship would result to Manriquez-Hernandez's qualifying relatives if he is removed. Hence, the Board was not required to remand to the IJ for further factfinding in order to deny cancellation as a matter of discretion. We therefore conclude the Board acted within its permissible scope of review and did not engage in factfinding prohibited by § 1003.1(d)(3)(iv).

Manriquez-Hernandez's alternative argument stems from the fact that the IJ and the Board relied on different tests in denying discretionary cancellation. The IJ relied on *In re Seda*, 17 I. & N. Dec. 550, 554 (B.I.A. 1980), which does not include hardship as a factor to be considered in a discretionary denial of voluntary departure. The Board, on the other hand, relied on *In re C-V-T-*, 22 I. & N. Dec. 7 (B.I.A. 1998), where the Board held that "evidence of hardship to the respondent and his family if [removal] occurs" is among the "favorable considerations" that may be considered in deciding a cancellation application. *Id.* at 11. But in conducting its de novo review

13

under *In re C-V-T-,* the Board relied on the factual findings the IJ made in applying *In re Seda*, which the Board held were "not clearly erroneous," R., Vol. 1 at 4.  In doing so, Manriquez-Hernandez concludes, the Board focused only on factors relevant to the *In re Seda* analysis and did not consider his hardship evidence, which he expressly called to the Board's attention in his brief on appeal.[7]

Under these circumstances, and coupled with the IJ's express refusal to take any testimony at the hearing regarding hardship, we conclude that the Board committed reversible error.  We simply cannot determine whether the Board factored the documentary hardship evidence into its discretionary calculus.  We do not suggest that hearing testimony on hardship is required before the Board can deny cancellation as a matter of discretion.  But the IJ's express refusal to take such testimony adds to our inability to determine whether the IJ or the Board considered hardship when denying cancellation as a matter of discretion.

In so concluding, we acknowledge the government's argument that *In re C-V-T-* does not require consideration of any particular factor in every case. *See* 22 I. & N. Dec. at 11 ("[T]here is no inflexible standard for determining who

---

[7] Manriquez-Hernandez informed the Board that his wife has "a long history of serious mental health issues stemming from sexual abuse as a child, including: Depression, Anxiety, and PTSD.  She also suffer[s] from Rheumatoid Arthritis." R., Vol. 1 at 43–44.  He added that "his family will suffer financially in his absence, not [to] mention the emotional consequences of [his] children growing up fatherless." *Id.* at 44.  And he pointed to country-conditions evidence showing "prevalent violence" in Mexico, and "a lower standard of education and healthcare in Mexico that prevent[s] him from taking his family with him to Mexico, as well as [an] almost [] non-existent mental healthcare system for [his] wife." *Id.*

should be granted discretionary relief, and each case must be judged on its own merits."). But it does require the agency to "balance the adverse factors . . . with the social and humane considerations presented in [a noncitizen's] behalf" in determining whether to grant cancellation as a matter of discretion. *Id.* (internal quotation marks omitted). Manriquez-Hernandez presented hardship evidence, so it was incumbent on the Board to consider it or explain why it would not consider it. The Board "is not required to discuss every piece of evidence when it renders a decision," *Hadjimehdigholi v. INS*, 49 F.3d 642, 648 (10th Cir. 1995), or "to write an exegesis on every contention," *Becerra-Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir. 1987) (internal quotation marks omitted). But it must "consider the issues raised," and its decision must "set[] out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided." *Becerra-Jimenez*, 829 F.2d at 1000 (internal quotation marks omitted). We are unable to determine whether the Board did so in this case.

The government's remaining arguments do not persuade us otherwise. The government asks us to apply the presumption of regularity because "the Board acknowledged the applicable law and standard of review and considered the appropriate factors." Resp. Br. at 44. "The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004) (internal quotation marks omitted). However, neither of the immigration cases the government cites in

15

support of its argument, *Khakhn v. Holder*, 371 F. App'x 933 (10th Cir. 2010), and

*Yuk v. Ashcroft*, 355 F.3d 1222 (10th Cir. 2004), applied the presumption of

regularity to salvage the Board's deficient substantive analysis.[8]  We conclude that

applying the presumption in this case would be improper.

The government points out that Manriquez-Hernandez filed documentary

evidence of hardship and drew the Board's attention to that evidence, and suggests

that both the IJ and the Board considered that evidence because they considered the

entire record.  But this makes it all the more surprising that neither the IJ nor the

Board said anything about the hardship evidence in their discretionary denials of

cancellation, and we are unwilling to assume that the Board considered the hardship

evidence in deciding to deny cancellation as a matter of discretion.

Finally, the government argues that Manriquez-Hernandez "testified about

why he should be granted 'any discretionary relief,'" Resp. Br. at 48 (quoting

R., Vol. 1 at 204), and he could have discussed the positive equities in connection

with his application for voluntary departure.  The testimony referred to, however,

was Manriquez-Hernandez's response to his attorney's question:  "'[G]iven your

juvenile history, why should the Court consider any discretionary relief for you?'"

---

[8] In *Khakhn*, we applied the presumption of regularity to a prior administrative decision and a deportation warrant an immigration officer relied on in later proceedings.  *See* 371 F. App'x at 936.  And in *Yuk*, we employed the presumption of regularity in concluding that the Board's summary affirmance procedure does not violate due process or administrative law principles given that the IJ's decision provides a reasoned explanation courts can review.  *See* 355 F.3d at 1232.

16

R., Vol. 1 at 204. He replied that he was trying to change and now had a family. And when his attorney asked if he would accept voluntary departure, he simply said, "Yeah." *Id.* at 205. In view of the IJ's directive that there would be no testimony about hardship, it is unsurprising that Manriquez-Hernandez's answers did not refer to hardship.

## D.    Voluntary departure

Like cancellation decisions, § 1252(a)(2) divests us of jurisdiction to review the denial of voluntary departure under § 1229c except for constitutional claims and questions of law. *See Gutierrez-Orozco v. Lynch*, 810 F.3d 1243, 1247 (10th Cir. 2016). Manriquez-Hernandez challenges the discretionary denial of voluntary departure based on the same arguments he raises regarding the denial of cancellation. We have concluded that those arguments present questions of law regarding consideration of the hardship evidence. We therefore have jurisdiction to consider those arguments as they relate to the denial of voluntary departure. Because the Board's discretionary denial of voluntary departure rested on the same analysis as its discretionary denial of cancellation, the Board is instructed to revisit the discretionary denial of voluntary departure in light of our decision, if necessary. *Cf. In re Seda*, 17 I. & N. Dec. at 554 (omitting hardship from non-exclusive list of voluntary-departure considerations).

## III.  CONCLUSION

We grant the petition for review in part, deny it in part, and remand to the

Board for further proceedings consistent with our disposition.

Entered for the Court

Joel M. Carson III
Circuit Judge